### HUGH GIBSON AND WIFE *v.* C. MOULTON ET AL.

#### (No. 5,464.)

1. A bastard child can inherit from the mother, only as heir at law.
2. A devise to B. for life with remainder to her issue, passes no estate to illegitimate issue of B.; none but lawful issue can take.
3. Where realty is devised to the children of A. for life, and in case of death of one or more of the said children, before the devise takes effect, leaving issue, then the share of such child to such issue for life, with remainder over for life to the issue of such issue, and in this manner down in entailment as far as may be allowed by the statute. *Held* that,
1. Under the statute regulating entailments the fee does not vest in the issue of the children of A.; but in the issue of such issue.
2. That in default of the issue of such issue, the property reverts to the heirs at law of the testator.

GENERAL TERM.—This case was reserved from special term for the opinion of all the judges, on the following facts.

On the 26th of February, 1844, Samuel Stitt, then and for many years previous living in Cincinnati, made by his last will and testament the following devise : "I do hereby give and devise to the children of my sister, Nancy, for and during the term of their natural lives, share and share alike, all the residue and remainder of the lands and tenements whereof I may die seized or possessed, and not otherwise herein before given and devised, whether held in possession, remainder, reversion or in action, together with the rents, issues and profits thereof; and in case of the death of one or more of said children, leaving issue of his, her or their bodies, at the time this devise takes effect, it is my wish, and I do hereby order and direct, that such issue, for and during the term of their natural lives, shall take under this, my will, precisely in the same manner as the immediate ancestor or ancestors of said issue would have taken, had she or they been then in being; and at the decease of any of the said devisees who shall have taken as aforesaid, for the term

of his, her or their natural life, I give and devise the share so given and taken, as aforesaid intended, to the issue of such devisee so dying, share and share alike, for their natural lives respectively; and again, at the death of the issue last aforesaid, or any of them, I further give and devise the respective share or estate of the said issue, or any of them so dying, to issue of such issue, or any of them, share and share alike, for the term of their natural lives, and in this manner down in entailment, as far as may be allowed by the statute, in such cases made and provided."

The testator died August 21st, 1849, and his will was afterward admitted to probate in the proper court. At the time of his death three children of his sister, Nancy Wilson, were living, viz : Nancy Wilson, William Wilson and Jane McNeely, all residing in Ireland. On the eighteenth day of March, 1849, one of the children of the testator's sister, Nancy Wilson, died, *leaving a natural child*, whose reported name was Mary Ann Robinson, and who afterward inter-married with Hugh A. Gibson, the plaintiff. William Wilson, the nephew of the testator, died March 18th, 1850, leaving an only child, Mary Ann Wilson, who died in January, 1855, leaving neither father, mother, brother sister nor child, and the next of kin were the descendants of Nancy Wilson, sister of Stitt. The other niece of testator, Jane McNeely, formerly Jane Wilson is now alive, having inter-married with William McNeely, one of the defendants, and is the mother of eight children, now living.

The statute of Ohio, restricting the entailment of real estate, which took effect on the 1st of June, 1812, see sec. 355, was in force when the testator died. It provided that all estates given in tail, shall be and remain an absolute estate in fee simple, to the issue of the first devisee in tail.

The plaintiffs, Hugh Gibson and Mary Ann, his wife, who is the natural child of the daughter of Nancy Wilson, claim to recover for her one-third of the estate devised, as the issue of her mother, and one-half of the estate devised to Wm. Wilson, and which passed to his daughter at his death. The

daughter being dead, her portion of the property, it is claimed, is to be divided between Gibson's wife and Jane McNeely.

*Warner M. Bateman, and Worthington & Matthews*, for plaintiffs.

*Stephen Clark*, for defendants.

GHOLSON, J., delivered the opinion of the court.

A preliminary question made in the case, is as to the effect of a former judgment of this court. It is claimed by the defendants to be a bar. We have before decided this point in general term; and, while it can not be considered as entirely free from difficulty, on a re-examination, we find no reason to change the opinion then expressed. Looking at the frame and scope of the pleadings, and the character of the parties in the former case, we do not think the judgment in that case amounts to a bar to the prosecution of this suit. The former action was, substantially, against a trustee for a settlement and declaration of rights under the trust. This is an action to recover real estate upon a strict legal title. It would be unjust under the circumstances, and we think the law does not require us to give to the judgment in the former action the effect which has been claimed.

The first question proper to be examined upon the merits of this case is, whether, according to the statute of descents, a bastard is capable of inheriting, or of transmitting inheritance from collateral kindred of the mother? The terms of our statute, as they stood at the time of the decision in *Little* v. *Lake*, 8 Ohio, 289, were as follows : " Bastards shall be capable of inheriting, or of transmitting inheritance on the part of their mother, in like manner as if they had been born in lawful wedlock." It was said in that case, " What interpretation shall be given to these words—*on the part of the mother* ? The counsel for the defendants would contend

that it means from, or through the mother; that it connects the bastard through her collaterally with all who are of her blood. But the expression, on the part of the mother, does not carry the mind beyond the mother, unless connected with words of more comprehensive meaning—such as ancestors on the part of the mother, or descendants on the part of the mother. The words *ex parte materna*, have an established legal meaning, importing only lineal descendants, and is opposed to the words *ex linea materna*, which denote a capacity of both lineal and collateral inheritance." The court then cite and adopt the argument of the supreme court of the United States, in *Stephenson* v. *Sullivant*, 5 Wheaton, 207, in which, speaking of the Ohio statute, it is said: Before the statute, "the current of inheritable blood was stopped in its passage from and through the mother, so as to prevent the descent of the mother's property, and of the property of her ancestors, either to her own illegitimate children, or to their legitimate offspring. The object of the legislature would seem to have been to remove this impediment to the transmission of inheritable blood from the bastard in the descending line, and give him a capacity to inherit in the ascending line, and through his mother. But although her bastard children are in these respects *quasi* legitimate, they are, nevertheless, in all others bastards, and as such, they have and can have neither father, brothers, nor sisters." It was therefore decided by the supreme court of the United States, that bastards could not inherit from a son of their mother, he not being their brother in contemplation of law. And our supreme court, upon the same principle of construction, in the case of *Little* v. *Lake*, held, that a bastard having died, leaving an estate, and his mother having previously died, her brothers and sisters could not inherit the estate. The court, in the conclusion of its opinion, say, that to authorize such an inheritance the addition of these words in the statute would be necessary: " If she be dead, it shall descend to the relatives on the part of the mother, as if the intestate had been legitimate." Subsequently the legislature added

11

the last clause to the section of the statute on the subject, which, it will be seen, is almost in the very words suggested by the supreme court.

We thus have an express decision of our supreme court, sanctioned and approved by the legislature. It must be admitted, that if the first clause of the section gives to bastards a capacity of inheriting from the collateral kindred of the mother, the last clause would be rendered senseless and unmeaning. It also follows that to allow a collateral inheritance in any other instance than that provided by that clause, would offend against the rule that " *expressio unius est exclusio alterius.*" That clause allows a descent from the bastard to the relatives of the mother, and not a descent from those relatives through the mother to the bastard.

In the recent case of *Lewis* v. *Eustler*, 4 Ohio St. 354, the judge who delivers the opinion of the court, speaking for himself, individually, expresses dissatisfaction with the construction given to the statute in the case of *Little* v. *Lake*, and *Stephenson* v. *Sullivant*. But it is quite clear, that the case of *Lewis* v. *Eustler*, does not overrule or profess to overrule the case of *Little* v. *Lake;* and we must confess that, sanctioned as the latter case is by legislative action, we can not conceive how any court, even that of the last resort, could undertake to overrule it. Upon us, it is certainly obligatory.

The next question is, as to the construction of the words "issue" or " children" occurring in a will. It is conceded that, independent of any change of policy indicated by statutory enactment, such words must be construed to mean lawful issue or lawful children. Indeed, the authorities upon this point are uniform and unanswerable. It is only hoped to escape their effect by showing that with a change in the policy of the law on the subject must come a change of the rule of construction ; and we might admit that, if the policy of the law in this respect were wholly changed, and instead of the rule, that " *liberi sunt quos nuptiæ demonstrant,*" the word children was directed, as to descent and distribution, to

Hugh Gibson and Wife *v.* C. Moulton et al.

include all who were children, in fact, without regard to their being born in wedlock, then there should be a corresponding change in the rule of construction. But if the law be only changed to a limited and definite extent, why should the change in the rule of construction be any greater? If a bastard can not inherit from a collateral relative of the mother as her child, why should he in the will of that relative be regarded as a child? If he can not represent the mother in taking the estate of the collateral relative by descent, why should such a representation be allowed in a devise to the issue or children of the mother?

It scarcely becomes us, upon a question which appears to be concluded by judicial precedent and legislative enactment, to speak of the bearing upon it of considerations of policy. But it might be urged that there are strong reasons why neither legislative enactment nor the rule of construction should embrace the case of illegitimate children, taking by descent, or by devise under a general description, the estate of collateral kindred of the mother. A collateral kinsman of the mother, according to the fixed policy of our laws, has the option of giving his property by will, or of allowing it to descend or be distributed under the provision of the law; and the law in its rules of descent and distribution, looks so well to the probable intent of an owner of property, that many have been induced to remark, and to act in the belief, that the law makes for a man as good a will as he can make for himself.

Why is this so? Why are men in so many instances content that their kindred shall take their property in the mode and proportion directed by law in case of intestacy? One of the reasons, undoubtedly, must be that those kindred are known; and how can they be known, as a general rule, except through the operation of the principle, that they are children whom marriage points out and demonstrates? If any other principle were to prevail, a childless decedent might be surrounded by kindred, such as cousins, uncles and aunts, among whom he was willing to allow his property to

be divided under the provisions of the law, and therefore refrained from making a will, and his expectations might be defeated by the coming forward, after his death, of an illegitimate descendant of a sister, whose very existence was unknown to him, and might have been purposely concealed.

It has been remarked that the wisdom of ancient rules of law is never fully appreciated until an attempt is made to change them, and it is a well-settled principle that they are not to be considered as changed by the innovation of legislation, any further than the express language of such legislation fairly construed may require.

The application of these principles to the present case disposes of any claim of the plaintiff under the will of Samuel Stitt. The plaintiff, Mary Ann Gibson, is the illegitimate daughter of Nancy Wilson, but she can not be regarded as the issue of Nancy Wilson, according to the intention of the testator. In like manner if the fee of any part of the property devised by that will became vested in the child of William Wilson, who has died without issue, the plaintiff, Mary Ann Gibson, can not inherit any part of the estate of that child. The only claim which can be sustained by the plaintiff is as heir-at-law to her mother, Nancy Wilson, by a direct inheritance. So far as any estate of inheritance became vested in Nancy Wilson, to be transmitted according to the statute of descents, by that estate Mary Ann Gibson may take, nothwithstanding her illegitimacy, for such is the provision of the statute. This leads to another inquiry—is there any such estate? If there be any such estate, it must have been devised by the will of Samuel Stitt to Nancy Wilson, the mother, or have descended to her from Samuel Stitt, as an estate not devised by his last will, and as to which he died intestate.

It is not and can not be claimed that the will of Samuel Stitt, by any direct devise, conveyed any estate in fee simple to Nancy Wilson. Under that will she took either an estate for life or an estate in tail. To determine which, the inten-

tion of the testator, as expressed in his will, is to be ascertained, and that intention must govern. 15 Ohio, 561.

It will be seen from the clause containing the devise to Nancy Wilson, that the testator makes express reference to the statute regulating entails, and it is entirely proper, for the purpose of ascertaining his intention, so to regard that clause of his will, as if that statute had been embodied in words. He clearly manifests an intention to restrain the alienation of the property devised so long as that statute will permit. He uses words sufficient to create an estate for life, or an estate tail, and if his general intention requires an estate for life, and this is permitted by the rules of law, why should not the intention prevail? That it shall so prevail in such a case, has been held by our supreme court. 15 Ohio, 562. It was certainly competent for the testator to vest the estate tail either in the children of his sister Nancy or in their issue, and his intention, as shown in the clause, very clearly requires that the latter should be the first donees in tail. The result of this contruction is, that Nancy Wilson, the mother of the plaintiff, Mary Ann Gibson, took only an estate for life, and consequently no estate of inheritance was vested in the mother by the will of Stitt, which the daughter could inherit.

In this view it is unnecessary to decide, whether, had an estate in tail been vested in Nancy Wilson, the mother, her illegitimate daughter could be issue in tail. It is, perhaps, a matter of doubt, whether the issue in tail is not to be considered as a purchaser taking *per formam doni,* and whether the statute of descents in allowing a descent from the mother to illegitimate children extends to such a case.

The remaining inquiry is, whether any part of the estate of Samuel Stitt descended to Nancy Wilson, the mother of Mary Ann Gibson? If there be any such estate, then, the daughter, though illegitimate, is entitled to recover it, as the heir-at-law of her mother.

If Samuel Stitt, by the sixth clause of his will, only conveyed estates in tail to the issue of the children of his sister

Nancy, and there was no issue, or any of the donees in tail have died without issue, then the fee did not become vested, as required by the statute; and unless it can be shown that according to the provisions of the will there were cross re-mainders between the donees in tail, there must be a claim on the part of the heirs-at-law of Samuel Stitt. "An estate tail is viewed as carved out of the inheritance, like any other particular estate, and upon its expiring by limitation, the donor or his heirs re-enter like any other reversioners." 1 Hilliard on Real Pro. 94.

There are no words in the will of Samuel Stitt from which an intention to create cross remainders between the donees in tail can be inferred. Upon his death the estate became vested in the children of Nancy, then living, for life, remain-der to the issue of those children in tail. There is a provision that if any of the children living when the will is made, die without issue, the surviving children shall take; but by no reasonable construction can such a provision be made to operate after his death.

The estate in tail carved out of the inheritance by the will of Samuel Stitt was divided into three portions. One was given to the issue of Nancy Wilson, one to the issue of Wil-liam Wilson, and one to the issue of Jane McNeely. The first has reverted for want of any issue; the second by the death of the first donee in tail, the third is in the possession of the tenant for life, who has issue, which issue will be the first donee in tail, and whether that reverts will depend on the contingency of the estate vesting in issue of such donee in tail. Should it so vest, it will become a fee under the statute, and the reversion will be gone.

It so happens that the heirs-at-law of Samuel Stitt were the three children of his sister Nancy. But their rights as heirs-at-law, and as devisees under the will, should not be confounded. Their claims, or the claims of their heirs, as reversioners, should be determined just as if they were not devisees. It would have been competent for Nancy Wilson, or William Wilson, to have conveyed her or his reversionary

interest to a stranger. Mary Ann Gibson, the plaintiff, is made by the statute of descents, heir of her mother, as to property vested in the mother, and is thus entitled to the reversionary interest which descended to her mother upon the death of Samuel Stitt. But she takes just so much and no more as was vested in the mother, and what the mother might have conveyed to a stranger.

What was left of the inheritance after the estates for life and in tail were carved out, descended to the three children of Nancy Stitt, and each had an equal reversionary interest in the whole estate and property, and in every part of it. When, therefore, the particular estate in any part or portion of that property expired by limitation, each of the heirs or those representing their interest, became entitled to an equal share in such part or portion. The particular estate has failed in two-thirds of the estate or property. Of this Mary Ann Gibson is entitled to one-third of the two-thirds, or two-ninths. If it should happen that the particular estate in the other portion should fail, as by the death of Jane McNeely without issue, or the death of her children without issue, then Mary Ann Gibson will become entitled to another ninth, making a full one-third of the whole, the full share which vested as a reversionary interest in her mother. As she will become entitled to this interest in the contingency stated, the conclusion follows that she can not now take more than two-ninths. To give her more would be to allow her to inherit through her mother from the deceased child of William Wilson, which, as has been shown, the law does not permit.

The result of the views which have been stated is, that the plaintiffs are entitled to recover two-ninths of the property described in the petition and no more. The judgment, therefore, will be for the recovery of an undivided interest to that extent.

Judgment for two-ninths of the property in fee.